**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LISETTE L. LEE,**

                Petitioner,                Civil Action 2:12-cv-327
                                                  Criminal Action 2:10-cr-160(1)

   v.

                                                   Judge Algenon L. Marbley
                                                   Magistrate Judge Elizabeth P. Deavers

**UNITED STATES OF AMERICA,**

                Respondent.


## ORDER AND REPORT AND RECOMMENDATION

Petitioner, Lisette Lee, seeks relief under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence.  On July 15, 2013, the United States Magistrate Judge issued a Report and Recommendation, in which she recommended that the Court deny five of Petitioner's seven claims of relief.  (ECF No. 263.)  With respect to Petitioner's remaining two claims of relief, the Court directed the parties to expand the record pursuant to Rule 7 of the Rules Governing Section 2255 Cases.[1]  The parties have since expanded the record in accordance with this Court's Order.[2]

---

[1] Rule 7 of the Rules Governing Section 2255 Cases provides in pertinent part as follows:

    (a) If the Motion is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the motion.  The judge may require that these materials be authenticated.

    (b) The materials that may be required include letters predating the filing of the motion, documents, exhibits, and answers under oath to written interrogatories propounded by the judge.  Affidavits may also be submitted and considered as part of the record.

    (c) The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

This matter is before the United States Magistrate Judge for consideration of Petitioner's final two claims of relief.  This matter is also before the Court for consideration of Petitioner's Motion to Prevent Undue Delay and Request for Sentence Modification.  (ECF No. 266.)  For the reasons that follow, it is **RECOMMENDED** that Petitioner's final two claims of relief be **DENIED**.  Petitioner's Motion to Prevent Undue Delay and Request for Sentence Modification is **DENIED**.

**I.**

The Court set forth a detailed factual background in its July 15, 2013 Report and Recommendation.  (ECF No. 263.)  For ease of reference, the Court incorporates the same background here and will set out only those facts necessary to dispose of the remaining issues.

On February 4, 2011, Petitioner pleaded guilty to conspiracy to distribute and possess with the intent to distribute 1,000 kilograms or more of marijuana pursuant to the terms of a negotiated plea agreement.  On June 10, 2011, the Court sentenced Petitioner to serve seventy-two (72) months of incarceration and five (5) years of supervised release.  Petitioner did not file a direct appeal.  On April 13, 2012, Petitioner filed the instant Motion to Vacate, Set Aside, or Correct Sentence, alleging that she was denied effective assistance of counsel.

During the hearing at which the Court accepted Petitioner's guilty plea in her underlying criminal case, Petitioner admitted to the facts that formed the basis of her plea and conviction.  Specifically, she admitted that between approximately November 2009 and June 2010, she knowingly participated in a large-scale conspiracy to transport and distribute marijuana from

---

Rule 7 of the Rules Governing Section 2255 Cases.

[2]The Court provided each party an opportunity to respond to the opposing party's expansion of the record.  The parties were directed to file their response to the opposing party's briefing within forty-five days of the Court's July 15, 2013 Order.  (ECF No. 263.)  Although neither party filed a direct response to the other's supplemental briefing, the Court has considered all of the materials, including the various affidavits, that the parties submitted.  (ECF Nos. 267,

2

California to Ohio. She admitted that she and her coconspirators were responsible for hauling approximately fourteen (14) separate shipments to Ohio, each consisting of roughly five hundred (500) pounds of marijuana. Federal agents estimated that the organization distributed 7,000 pounds of marijuana and realized a net profit of over $3 million.

Now, in the instant Motion to Vacate, Set Aside, or Correct Sentence, Petitioner asserts that she participated in the conspiracy under the duress and coercion of two of her coconspirators. According to Petitioner, David Garrett and a man known to her as Marco, both of whom participated in the conspiracy to transport marijuana, threatened to harm her and her loved ones if she refused to assist in the operation. Throughout the underlying criminal proceedings, according to Petitioner, she informed each of her six attorneys of Garrett's and Marco's threats. Petitioner's attorneys purportedly refused to disclose the alleged duress and coercion to prosecutors and the Court, and instead urged her to plead guilty and admit to facts she contends are false.

## II.

A prisoner seeking relief under 28 U.S.C. § 2255 "'must allege as a basis of relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact that was so fundamental as to render the entire proceeding invalid.'" *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallet v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). Here, Petitioner contends that she was denied effective assistance of counsel, which places her allegations in the first category of purported error of a constitutional dimension. To prevail, Petitioner must prove by a preponderance of the evidence that she was denied effective assistance of counsel. *Pough*, 442 F.3d at 964; *see also McQueen v. United States,* 58 Fed. App'x 73, 76 (6th Cir. 2003) ("Defendants seeking to set aside their sentences

---

268, 270, and 271.)

3

pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

"'In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Howard v. United States*, 485 Fed. App'x 125, 128 (6th Cir. 2012) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). A hearing is required unless the "'record conclusively shows that the petitioner is entitled to no relief.'" *Id.* (quoting *Valentine*, 488 F.3d at 333). In other words, a hearing is not required if "'the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statement of fact.'" *Brown v. United States*, 261 Fed. App'x 865, 869 (6th Cir. 2008) (quoting *Valentine*, 488 F.3d at 333).

### III.

As a preliminary matter, the Court addresses Petitioner's Motion to Prevent Undue Delay and Request for Sentence Modification. (ECF No. 266.) The Court construes Petitioner's Motion as a Motion for Reconsideration of the July 15, 2013 denial of her Motion to Transfer to Presiding Judge. (ECF No. 263.) A Court may reconsider an interlocutory order at any time prior to entry of final judgment. Fed. R. Civ. P. 54(b); *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir. 2004). "Courts traditionally will find justification for reconsidering interlocutory orders when there is (1) an intervening change in controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009). Here, Petitioner seeks reconsideration of the denial of her request to transfer this matter to the presiding judge. In support, she raises concerns of undue delay, and urges the Court to "carefully consider the substantial arguments and uncontested testimony presented throughout Petitioner's pleadings."

(Mot. 2, ECF No. 266.) Notwithstanding that the Undersigned has, in fact, carefully considered the arguments and all materials she has presented in this case, these purported justifications fail to establish cause for reconsideration. Although Petitioner seemingly submits that reconsideration is necessary to prevent injustice arising from the perceived delay in addressing her claims, this matter will be ripe for final disposition once the parties submit objections, if any, to the Report and Recommendations entered herein. Accordingly, reconsideration of the Court's prior denial of Petitioner's Motion to Transfer to Presiding Judge is unnecessary to prevent injustice. Petitioner's Motion for Reconsideration is, therefore, **DENIED**. (ECF No. 266.)

In addition, Petitioner seeks a modification of her sentence to allow her to serve the remainder of her term of incarceration on home confinement. To the extent Petitioner seeks to amend her § 2255 Petition to request relief beyond that sought in her original Petition, she must seek leave to do so under Rule 15(a) of the Federal Rules of Civil Procedure. *See United States v. Gibson*, 424 Fed. App'x 461, 465 (6th Cir. 2011) (recognizing that Rule 15(a) applies to a petitioner's request to amend her § 2255 petition). Without expressing judgment as to the likelihood of success of any such motion, the Court advises Petitioner that if she intends to assert additional grounds for relief or request a sentence modification under § 2255, she must move under Rule 15(a) and demonstrate good cause. Moreover, any new claim purportedly seeking a sentence modification must arise from a violation of the constitution, a sentence imposed outside the statutory limits, or an error of fact so fundamental as to render the entire proceedings invalid. *Pough*, 442 F.3d at 964. Furthermore, the Court notes that the filing of a motion for leave to amend the petition will further delay the ultimate resolution of this action.

## IV.

As the Court recognized in its previous Order, it has been nearly forty years since the United States Supreme Court reiterated that the right to counsel guaranteed by the Sixth

5

Amendment to the United States Constitution is the "right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a complaint of ineffective assistance of counsel, a defendant must meet the now-familiar two-prong *Strickland* test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. The Supreme Court emphasized that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Put plainly, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.*

Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 692. Rather, a defendant must demonstrate prejudice to prevail on a claim of ineffective assistance of counsel. *Id.* at 693. To do so, a defendant must establish that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because a defendant must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that she has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

**A.     Motion to Suppress**

Petitioner contends that she was denied the effective assistance of counsel because her attorneys declined to pursue a motion to suppress evidence. Petitioner's second set of legal counsel,[3] James Owen and Todd Long, initially filed a motion to suppress evidence seized from a

---

[3] As indicated in the factual background set forth in the prior Report and Recommendation

6

traffic stop that led to Petitioner's arrest.  In the motion suppress, Owen and Long argued that officers lacked reasonable suspicion to initiate the traffic stop as well as probable cause to search Petitioner's vehicle and luggage.  (Mot. to Supp., ECF No. 73.)  Owen and Long later withdrew the motion, which Petitioner now contends constitutes ineffective assistance of counsel.

To prevail on her claim, Petitioner must first establish that her counsel's decision to forego the suppression motion was not a product of calculated legal strategy.  *See Benge v. Johnson*, 312 F. Supp. 2d 978, 1026 (S.D. Ohio 2004) ("[C]ounsel's failure to file a motion to suppress . . . was the result of a calculated strategy, not oversight or neglect[, and is thus] entitled to a great deal of deference."); *see also Rodriguez v. Warden, S. Oh. Corr. Facility*, No. 3:11-cv-282, 2013 WL 170113, *5 (S.D. Ohio 2013) (finding that counsel reasonably decided against filing a motion to suppress under the circumstances, "*i.e.*, if a motion to suppress were filed, the state's plea offer would no longer be available and Petitioner would face a mandatory ten-year sentence if the motion to suppress were denied.")  (Report and Recommendation adopted).

In addition, Petitioner must establish that her attorney's failure to pursue the motion to suppress caused her prejudice within the meaning of *Strickland*.  Specifically, she must "'prove that [her] Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.'" *Tankelsy v. Mills*, 491 Fed. App'x 649, 655 (6th Cir. 2012) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).  The Supreme Court has indicated that "[a]lthough a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim . . ., a good Fourth Amendment issue alone will not earn a prisoner federal habeas relief." *Kimmelman*, 477 U.S. at 382.

---

incorporated herein, Petitioner hired three and fired two sets of legal counsel during the underlying criminal proceedings.

Here, although Respondent contends she could not demonstrate that her Fourth Amendment claim is meritorious, the Court need not decide whether Petitioner suffered prejudice within the meaning of *Strickland* because the record conclusively establishes that Owen and Long withdrew the motion to suppress pursuant to calculated strategy. This determination precludes a finding of ineffective assistance of counsel.  Both Owen and Long provided affidavits concerning the withdrawal of the motion to suppress.  Owen avers that he and Long met with Agent Matthew Huefelder, the agent who initiated the traffic stop and search of Petitioner's luggage, in January 2011.  (Owen Aff. ¶ 5, ECF No. 268-1).  According to Owen, he and Long became convinced from their conversation with Huefelder that the motion to suppress had little chance of success. Specifically, Owen avers that if Heufelder "testified to the information [discussed in the meeting], it would be sufficient for the Court to find that there was a reasonable and articulable suspicion for the investigatory detention." *Id.* at ¶ 6.  In addition, Owen submits that "[t]his information would also have been sufficient to lead a reasonably prudent person to believe that a crime was being committed under the probable cause standard." *Id.*  In light of their determination that the motion would likely fail, Owen and Long aver that they advised Petitioner that she should withdraw the motion and accept the terms of the plea agreement. *Id.* at ¶ 9.  According to Owen, they further advised Petitioner that if she proceeded with the motion and the Court denied it, which was likely in light of their discussion with Agent Huefelder, she would be left with a less favorable plea agreement or she would have to proceed to trial. *Id.* at ¶ 8.  Owen avers that Petitioner expressed her understanding that the withdrawal of the motion to suppress "was a strategic decision made in an effort to obtain a plea agreement that was more favorable than what she could negotiate if she proceeded on the motion and lost." *Id.* at ¶ 9.  Long substantiates Owen's testimony in his own sworn affidavit, which is substantively identical to Owen's.  (ECF No. 268-2.)

Petitioner does not challenge Owen's and Long's assertion that they withdrew the motion to suppress pursuant to a calculated legal strategy.  Rather, she contends that they withdrew the motion without her authorization.  (Lee Decl. ¶ 7, ECF No. 267-1.)  In addition, she questions the soundness of such an "unconventional" defense strategy.  *Id.*  The Court finds Petitioner's contentions unpersuasive and insufficient to establish that she was denied the effective assistance of counsel.

First, even if Owen and Long withdrew the motion to suppress without her authorization, as Petitioner now claims for the first time in her supplemental declaration, they nevertheless acted pursuant to calculated strategy.  In her numerous previous filings with this Court, Petitioner questioned the reasonableness of counsel's decision to withdraw the motion to suppress without ever suggesting that they withdrew the motion without her authorization.  Indeed, Petitioner submitted a copy of an e-mail correspondence from Long in which he recommended that she withdraw the motion in light of the new evidence, which suggests that he sought prior authorization to withdraw the motion.  (Am. Pet. Ex. C, ECF No. 247-1.)  Even assuming, however, that Owen and Long did not have Petitioner's authorization to withdraw the motion to suppress, the dispositive question is whether they withdrew it pursuant to calculated legal strategy.  *Benge*, 312 F. Supp. at 1025.  In light of Owen's sworn affidavit, Long's sworn affidavit, the e-mail message Petitioner submitted in which Long recommends withdrawing the motion, and Petitioner's failure to offer any evidence to the contrary, the Court finds that the record conclusively establishes that Owen and Long acted pursuant to calculated legal strategy.  Accordingly, it is **RECOMMENDED** that Petitioner's claim arising from her counsel's withdrawal of the motion to suppress evidence be **DENIED**.

9

**B.     Advice Regarding Right to Appeal**

Petitioner next contends that her counsel was constitutionally deficient for failing to file an appeal of her sentence on her behalf. A variation on the two-prong *Strickland* test extends to counsel's failure to file an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). Under these circumstances, the Court first asks whether counsel disregarded specific instructions from the defendant concerning the filing of an appeal. *Id.* at 477. If so, counsel's actions are objectively unreasonable and the Court moves on to the prejudice inquiry. If not, the Court must determine whether counsel consulted with the defendant about an appeal. *Id.* at 478. The term consult in this regard means "advising the defendant about the advantages of taking appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* If counsel has not consulted with the defendant, "the court must in turn ask a second, subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* If so, then the first prong of the *Strickland* test is satisfied and the Court turns to the prejudice inquiry.

In determining whether a failure to consult with the defendant constitutes deficient performance, the Supreme Court has held that counsel has a "constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he or she was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. The Supreme Court further elaborated as follows:

> In making this determination, courts must take into account all the information counsel knew or should have known.  Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.  Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence

> bargained for as part of the plea and whether the plea expressly reserved or waived some appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.*

Once a petitioner demonstrates that her counsel performed deficiently in consulting regarding an appeal, she must next establish that she suffered prejudice as a result. *Id.* at 481. "[T]o show prejudice under these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him [or her] about an appeal, he [or she] would have timely appealed." *Id.* at 484. "[E]vidence that . . . the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485. Although evidence that the defendant "sufficiently demonstrated to counsel his [or her] interest in an appeal" will satisfy the deficiency prong of *Strickland*, "such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he [or she] would have instructed counsel to file an appeal." *Id.* at 486. Moreover, "a defendant's inability to specify the points he would raise were his right to appeal reinstated will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed." *Id.* (quotation marks and internal citation omitted). Rather, "the defendant [must] demonstrate that, but for counsel's deficient conduct, he would have appealed." *Id.*

Here, the record conclusively establishes that Petitioner cannot succeed on her ineffective-assistance claim arising from her counsel's failure to appeal her sentence. Where, as here, the record contains no evidence that counsel disregarded specific instruction to file an appeal, the Court must first determine whether counsel properly consulted with Petitioner concerning an appeal. Petitioner's third set of counsel, Jon Saia and Joseph Reed, submitted affidavits in which

11

they swear under penalty of perjury that they discussed the possibility of appealing with Petitioner. *See* Saia Aff. ¶ 8, ECF No. 268-4 ("Subsequent to sentencing, [Saia] and Mr. Reed discussed a potential appeal of the sentence of the Court."); Reed Aff. ¶ 6, ECF No. 268-3 ("After the sentencing we discussed appealing the sentence and advised her that she had ten (10) days to decide so we could timely file a Notice of Appeal."). Although Petitioner herself does not deny that she was properly counseled regarding the benefits of an appeal, neither Saia nor Reed indicates whether they engaged in the type of discussion required by *Flores-Ortega*. *See Pitcher v. Huffman*, 65 Fed. App'x 979, 982-83 (6th Cir. 2003) ("While all three affidavits corroborate that an exchange of some sort between Petitioner and [counsel] concerning an appeal occurred, it is impossible for us to divine . . . whether that colloquy constituted the kind of weighing of the pros and cons of an appeal that *Flores-Ortega* clearly envisions."). Consequently, the Court must proceed to the subsidiary question of whether the failure to consult itself constitutes deficient performance. As set forth above, this inquiry depends on whether a rational defendant in Petitioner's shoes would want to appeal because, for example, non-frivolous grounds for appeal existed; and whether Petitioner reasonably demonstrated that she was interested in appealing. *Flores-Ortega*, 528 U.S. at 480.

With respect to the existence of legitimate grounds for an appeal, both Saia and Reed swear to their belief that no non-frivolous grounds for appeal existed. *See* Reed Aff. ¶ 7, ECF No. 268-3 ("Given the Court's stated reasons for the sentence and its application of the § 3553(a) sentencing factors, Affiant does not believe there was any legitimate basis for an appeal of the sentence."); Saia Aff. ¶ 12, ECF No. 268-4 ("Affiant believes that a 'non-frivolous' ground for an appeal of Ms. Lee's sentence does not exist."). Indeed, the Supreme Court has recognized that a guilty plea weighs against finding a constitutionally-imposed duty to consult regarding an appeal, "because a guilty plea reduces the scope of potentially appealable issues and because such a plea

12

may indicate that the defendant seeks an end to judicial proceedings." *Flores-Ortega*, 528 U.S. at 480.[4]

As for the second circumstance giving rise to a duty to consult regarding an appeal, namely, whether Petitioner expressed sufficient interest in appealing, the record contains conflicting evidence. Petitioner alleges that after sentencing she looked to Saia and asked, "[i]s there anything else we can do?" (Am. Pet. 25, ECF No. 247.) In her most recent declaration, Petitioner again indicates that she asked Saia after sentencing if there was anything else that could be done. (Lee Supp. Decl. ¶ 3, ECF No. 267-1.) Saia and Reed, on the other hand, aver that Petitioner expressly stated that she did not wish to appeal her sentence. *See* Saia Aff. ¶ 9, ECF No. 268-4 ("Ms. Lee expressly stated that she did not wish to appeal the sentence of the Court.");

---

[4] Petitioner offers no grounds for an appeal of the sentence but instead essentially reiterates her claims set forth in her petition as purported bases for an appeal:

(1) The warrantless search and seizure, a bedrock violation of the Fourth amendment.
(2) The gross inaccuracies purposely presented to the government and to the Court.
(3) The exclusion of the duress and coercion facts as presented now by witness testimony.
(4) The failure to challenge the weight of the seizure, contrary to well-settled law.
(5) The grossly inaccurate statements submitted as fact and contained within the plea agreement.
(6) The failure to establish a factual Presentence Report and the vast inaccuracies which led the Court to impose and [*sic*] inappropriate sentence. An accurate Presentence Report is legally required prior to the sentencing of any defendant. The Presentence Report and its veracity is [*sic*] grounded in well-settled law.
(7) The suppressed evidence and the sentence disparity conducive with the co-defendants [sic] roles in the offense, a result of a defective and biased investigation by the DEA and the prosecutor.
(8) The cumulative errors enacted by the Petitioner's legal counsels [*sic*] from the inception of this case." (ECF No. 267.)

To the extent any of these could have been grounds for appeal, Petitioner's guilty plea extinguished them. *See United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001) (noting general rule that a guilty plea waives all non-jurisdictional defects in pre-plea proceedings unless defendant preserved his or her right to do so by entering a conditional plea in compliance with Federal Rule of Criminal Procedure 11(a)(2)); *United States v. Bell*, 350 F.3d 534, 535 (6th Cir. 2003) (same).

Reed Aff. ¶ 6, ECF No. 268-3 ("[Petitioner] expressly stated she did not wish to appeal the sentence."). Furthermore, the fact that Petitioner pleaded guilty might have suggested to counsel that she was not interested in appealing her sentence. *See Flores-Ortega*, 528 U.S. at 480 (recognizing that a guilty plea "may indicate that the defendant seeks an end to judicial proceedings").

The Court has significant doubt whether merely asking if "there is anything we can do" connotes sufficient interest in appealing, especially in light of counsel's sworn statements that Petitioner expressly declined. Nevertheless, the Court need not determine whether Petitioner expressed sufficient interest in appealing or whether non-frivolous grounds for appeal existed because Petitioner cannot establish that she suffered prejudice from the lack of consultation.[5] She has not submitted, for example, sworn testimony stating that she would have timely appealed her sentence with appropriate consultation. To be sure, she avers that she believes that grounds for an appeal existed, and that she later learned from consulting with other lawyers that filing a notice of appeal constitutes routine practice in criminal cases. Lee Supp. Decl. ¶¶ 6-10, 5, ECF No. 267-1 ("Since I have been incarcerated, every attorney I or my family has consulted, has advised that a Notice of Appeal is routinely filed by any competent attorney to secure and preserve the right to direct appeal."). Testimony concerning subsequent advice from different counsel, however, is insufficient to meet Petitioner's burden of establishing that she would have timely appealed had counsel properly informed her of the benefits and risks of doing so.

Not only has Petitioner offered no evidence that she would have timely appealed her sentence with appropriate consultation, but the record suggests that she would not have done so.

---

[5] Again, counsel indicate that they did consult with Petitioner and she expressly stated that she did not want to appeal. Petitioner does not deny that such consultation took place. The Court proceeds to these subsequent inquiries only because the record does not reveal the substance of these consultations as required under *Flores-Ortega*.

14

First, Petitioner pleaded guilty, which, as indicated above, the Supreme Court has recognized weighs against finding that the defendant would have timely appealed. *Flores-Ortega*, 528 U.S. at 480; *see also United States v. Lovell*, 83 Fed. App'x 754, 760 n.3 (6th Cir. 2003) (noting, as did the Supreme Court, that a "highly relevant factor" in this inquiry is whether the conviction follows a trial or guilty plea). Also, Petitioner received a sentence of seventy-two months of incarceration, which was far below the Sentencing Guidelines range of one hundred thirty-five (135) to one hundred sixty-eight (168) months, as well as the prosecutor's request for eighty (80) months. The leniency of her sentence further reduces the likelihood that she would have timely appealed with proper consultation. *See Lovell*, 83 Fed. App'x at 760 n.3 ("A district court must also consider whether the defendant received the bargained-for sentence . . . ."). In similar circumstances, the United States Court of Appeals for the Sixth Circuit has upheld a district court's finding that a petitioner failed to meet his burden of demonstrating that he would have appealed his sentence:

> In this case, Appellant pleaded guilty, he received a sentence within the allowable sentencing range, [and] he expressed his understanding of the relevant sentencing range . . . . He argues that any reasonable defendant would appeal a sentence of 30 years, but this is little more than his own, somewhat self-serving opinion, and is a dubious proposition at best, given the underlying facts. When the record is considered as a whole, Appellant simply cannot show that the district court was clearly erroneous in its determination that he had not demonstrated a reasonable probability that he would have appealed.

*Id.* Here, as in *Lovell*, Petitioner expressed her understanding on the record of the relevant sentencing range:

> THE COURT: Do you understand that the mandatory minimum penalty is ten years, and that the maximum possible penalty is life imprisonment, a $4 million fine, five years supervised release, and a one hundred dollar special assessment? Do you understand that's the maximum possible penalty?
>
> THE DEFENDANT: Yes.

15

> THE COURT: Do you understand that if I accept your plea of guilty, I can impose this maximum penalty?
>
> THE DEFENDANT: Yes.

(Plea Tr. 8, ECF No. 132.)  Thus, Petitioner understood that she could have received anywhere from ten years to life in prison for her crime.  That she ultimately received a mere seventy-two (72) month sentence weighs against finding that she would have appealed her sentence with proper consultation.  *Lovell*, 83 Fed. App'x at 760 n.3.  Indeed, when asked by the Court on the record, Petitioner specifically stated that she did not wish to appeal her sentence.  (Sentencing Tr. 42, ECF No. 187.)

Finally, in its prior Order directing the parties to expand the record, the Court specifically informed Petitioner of her burden to demonstrate that she would have timely appealed her sentence with proper consultation.  (Order and Report and Recommendation 40, 41, 42, ECF No. 263.)  The Court also provided Petitioner additional opportunity to submit evidence in this regard.  *Id.* at 41, 42.  Petitioner's failure to present evidence that she would have appealed her sentence with proper consultation, despite specific instruction that such evidence is necessary for her to succeed, further suggest that no such evidence exists.

Accordingly, it is **RECOMMENDED** that Petitioner's claim arising from her counsel's failure to file an appeal on her behalf be **DENIED**.

## V.

For the foregoing reasons, Petitioner's Motion to Prevent Undue Delay and Request for Sentence Modification is **DENIED**.  It is **RECOMMENDED** that Petitioners final two claims of relief, as set forth herein, be **DENIED**.

## VI.

The Court previously held in abeyance any objections to the July 15, 2013 Report and Recommendation addressing Petitioner's additional claims of relief.  The parties are now afforded the opportunity to object to both the July 15, 2013 Report and Recommendation and the instant Report and Recommendation.  Accordingly, if any party seeks review by the District Judge of either Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation(s), specifically designating the Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to either this or the July 15, 2013 Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**DATE: October 3, 2013**            */s/ Elizabeth A. Preston Deavers*
                                    **ELIZABETH A. PRESTON DEAVERS**
                                    **UNITED STATES MAGISTRATE JUDGE**