IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LISETTE L. LEE,**

        **Petitioner,**           Civil Action 2:12-cv-327
                                        Criminal Action 2:10-cr-160(1)

    v.

                                        **JUDGE ALGENON L. MARBLEY**
                                        Magistrate Judge Elizabeth P. Deavers

**UNITED STATES OF AMERICA,**

        **Respondent.**

## OPINION AND ORDER

On April 13, 2012, Petitioner filed a Motion to Vacate Sentence under 28 U.S.C. § 2255. After weeks of correspondence, hundreds of pages of briefing and affidavits, two supplemental Petitions, random motions, and delays in obtaining the necessary waiver of Petitioner's attorney-client privilege, the matter was fully briefed by November 2012. The United States Magistrate Judge issued a Report and Recommendation on July 15, 2013 recommending that the Court deny five of Petitioner's claims of ineffective assistance of counsel and directing the parties to expand the record with respect to two discrete issues. Briefing concluded on those matters on August 22, 2013. The Magistrate Judge issued a second Report and Recommendation six weeks later on October 3, 2013. Altogether, the Magistrate Judge recommended that the Court deny all of Petitioner's claims.

Pursuant to 28 U.S.C. § 636(b), this Court has conducted a *de novo* review. For the reasons that follow and for those thoroughly detailed by the Magistrate Judge in her Reports and Recommendations, Petitioner's Objections are **OVERRULED.** The Reports and

Recommendations are **ADOPTED** and **AFFIRMED**. Petitioner's Motion to Vacate Sentence is **DENIED**.

## I.

Petitioner has filed an "Opposition to Magistrate [Judge's] Order and Report and Recommendation." In it, Petitioner fails to assert any new grounds or lodge any specific Objections to the Magistrate Judge's findings of fact and conclusions of law. Nor does Petitioner provide any new factual or legal arguments. Petitioner merely summarizes her previous arguments and sets forth the same factual allegations that the Magistrate Judge reviewed and analyzed. The Court advised Petitioner that she must designate the parts of the Reports and Recommendations to which she was objecting as well as the basis for the objections. (Report and Rec., Oct. 3, 2013 at p. 16, PAGEID 1950 (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)). Moreover, the Court advised Petitioner that general objections to the Magistrate Judge's Reports and Recommendation would not suffice to preserve issues for appeal. *Id.* (citing *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007)). Nevertheless, the Court turns to the matters raised by Petitioner Opposition, which the Court construes as Objections to the Magistrate Judge's Reports and Recommendations.

## II.

Because the Court adopts the Magistrate Judge's Reports and Recommendations, it will not fully repeat the facts of the case again here. Briefly, as summarized by the Magistrate Judge:

> On February 4, 2011, Petitioner pleaded guilty to conspiracy to distribute and possess with the intent to distribute 1,000 kilograms or more of marijuana pursuant to the terms of a negotiated plea agreement. On June 10, 2011, the Court sentenced Petitioner to serve seventy-two (72) months of incarceration and five (5) years of supervised release. Petitioner did not file a direct appeal. On April 13, 2012, Petitioner filed the instant Motion to Vacate, Set Aside, or Correct Sentence, alleging that she was denied effective assistance of counsel.

2

> During the hearing at which the Court accepted Petitioner's guilty plea in her underlying criminal case, Petitioner admitted to the facts that formed the basis of her plea and conviction. Specifically, she admitted that between approximately November 2009 and June 2010, she knowingly participated in a large-scale conspiracy to transport and distribute marijuana from California to Ohio. She admitted that she and her coconspirators were responsible for hauling approximately fourteen (14) separate shipments to Ohio, each consisting of roughly five hundred (500) pounds of marijuana. Federal agents estimated that the organization distributed 7,000 pounds of marijuana and realized a net profit of over $3 million.
>
> Now, in the instant Motion to Vacate, Set Aside, or Correct Sentence, Petitioner asserts that she participated in the conspiracy under the duress and coercion of two of her coconspirators. According to Petitioner, David Garrett and a man known to her as Marco, both of whom participated in the conspiracy to transport marijuana, threatened to harm her and her loved ones if she refused to assist in the operation. Throughout the underlying criminal proceedings, according to Petitioner, she informed each of her six attorneys of Garrett's and Marco's threats. Petitioner's attorneys purportedly refused to disclose the alleged duress and coercion to prosecutors and the Court, and instead urged her to plead guilty and admit to facts she contends are false.

(Report and Rec., Oct. 3, 2013 at pp. 2-3, PAGEID 1936-37.)

### III.

The Magistrate Judge set forth the correct legal standard for the Court's consideration of Petitioner's Motion to Vacate her sentence under 28 U.S.C. § 2255:

> A prisoner seeking relief under § 2255 "'must allege as a basis of relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact that was so fundamental as to render the entire proceeding invalid.'" *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallet v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). Here, Petitioner contends in each of her seven claims of relief that she was denied effective assistance of counsel, which places her allegations in the first category of purported error of a constitutional dimension. To prevail, Petitioner must prove by a preponderance of the evidence that she was denied effective assistance of counsel. *Pough*, 442 F.3d at 964; *see also McQueen v. United States*, 58 Fed. App'x 73, 76 (6th Cir. 2003) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").
>
> "'In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the

3

petitioner's claims.'" *Howard v. United States*, 485 Fed. App'x 125, 128 (6th Cir. 2012) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). A hearing is required unless the "'record conclusively shows that the petitioner is entitled to no relief.'" *Id.* (quoting *Valentine*, 488 F.3d at 333). In other words, a hearing is not required if "'the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statement of fact.'" *Brown v. United States*, 261 Fed. App'x 865, 869 (6th Cir. 2008) (quoting *Valentine*, 488 F.3d at 333).

(Report and Rec., July 15, 2013, at PAGEID 1831)(footnote omitted).

Moreover, the Magistrate Judge correctly described the standard for reviewing a claim for ineffective assistance of counsel:

Nearly forty years ago, the United States Supreme Court reiterated that the right to counsel guaranteed by the Sixth Amendment to the U.S. Constitution is the "right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a complaint of ineffective assistance of counsel, a defendant must meet the now-familiar two-prong *Strickland* test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. The Supreme Court emphasized that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Put plainly, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.*

Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 692. Rather, a defendant must demonstrate prejudice to prevail on a claim of ineffective assistance of counsel. *Id.* at 693. To do so, a defendant must establish that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because a defendant must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that she has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

4

# IV.

The central themes of Petitioner's Objections are that the Magistrate Judge took too long to render a decision and was prejudiced against her. For instance, Petitioner contends that she was subjected to "undue delay." She asserts that the Magistrate Judge "employed artificial reasoning based on premises that are not only impractical, but impossible in real life" and that her decision was "an elongated rubber-stamp" for the Government's arguments. (Pet.'s Obj., ECF No. 277 at PAGEID # 1957.) Further, Petitioner maintains that the Magistrate Judge was personally biased against her because she did not view the case through the prism of a privileged Asian heiress:

> [The Magistrate Judge] is presumably not the progeny of an internationally prominent family, and seemingly not aware or sensitive to the many nuances, demands, and, and societal burdens contained therefrom. [The Magistrate Judge] is not Asian, with its overwhelming time-honored cultural demands, and as a non-Asian, did not attempt to consider the Asian cultural family traditions and extreme pressures implemented by honored paternal domination and practices in her judicial review.

(*Id.*)

The Court has conducted a *de novo* review of the record as well as the detailed Reports and Recommendations and finds nothing to substantiate Petitioner's assertion that the Magistrate Judge was biased. Indeed, on the issue of the appropriate standard to employ in assessing the facts of the case, the Magistrate Judge had only this to say as to Petitioner's contention that she should be treated differently because of her background:

> Completely unavailing to the point of absurdity is Petitioner's suggestion that her actions should be judged not by the objective standard of a reasonable person, but rather that of a reasonable Asian heiress. Petitioner argues that "there was no advocacy [at the trial court level] for her privileged and conservative Asian background, the cultural demands, [or] the inherent horror of failure and disgrace. . . ." (Reply 13-14.). She contends she is "an Asian heiress, cared for and sheltered her entire life by governesses, advisors, tutors, accountants, and bodyguards," and that she was "neither prepared, nor emotionally equipped, to deal with the Garretts and 'Marcos' of the world." (Pet. 9, ECF No. 222.)

> According to Petitioner, "to compare [her] with the average American is tantamount to ignorance, disparity and prejudice." (Reply 14, ECF No. 256.)
>
> Petitioner has not advanced, and suffice to say the Court fails to find any support in the law for holding her to a "reasonable Asian heiress" standard in place of the well-established reasonable person standard. *Cf. United States v. Johnson*, 416 F.3d 464, 469 (6th Cir. 2005) (declining to deviate from the reasonable person standard, stating that the defendant's "'reasonable retarded person' standard is unknown to our criminal jurisprudence, state or federal, and cannot coexist with the well settled reasonable person standard").

(Report and Recommendation, July 15, 2013, at p. 22, PAGEID 1844.) Petitioner can hardly claim that the Magistrate Judge's rejection of this argument demonstrates that she was personally biased against her when Petitioner offered no authority to support her position. More to the point, the law provides no basis from which the Court could employ the standard of review Petitioner seeks. The Magistrate Judge cannot be faulted for being personally biased against the Petitioner because she applied the correct law.

Petitioner also continues to assert that her counsel were ineffective, and in fact perpetuated a fraud on this Court, by failing to present the "truth" by way of a defense of coercion and duress. The Magistrate Judge devoted thirteen (13) pages of the Report and Recommendation addressing each and every aspect of Petitioner's contentions in this regard. At bottom, the Court agrees with the Magistrate Judge that Petitioner would have failed to prove the defense of duress under the facts of this case. The Magistrate Judge analyzed the issue as follows:

> To succeed on a coercion/duress affirmative defense at trial, a criminal defendant must prove the following five elements:
>
> > (1) the defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

6

(2) the defendant had not recklessly or negligently placed [herself] in a situation in which it was probable that [s]he would be forced to choose the criminal conduct;

(3) the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;

(4) a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm;

(5) the defendant did not maintain the illegal conduct any longer than absolutely necessary.

*United States v. Singleton*, 902 F.2d 471, 472-73 (6th Cir. 1990). Petitioner would fail on at least three of these five elements.

. . .

Here, Petitioner would be unable to establish a duress defense . . . . First, although arguably Petitioner faced a threat during the in-person meeting with Garrett when he allegedly shouted and slammed his fists on the car, such threat "was no longer imminent or impending as soon as [Petitioner] was no longer in [Garrett's] presence." [*United States v. Stapleton*, 297 Fed. App'x 413,] 424 [(6th Cir. 2008]; *see also United States v. Gatti*, 434 Fed. App'x 364, 364-65 (5th Cir. 2011) (affirming denial of § 2255 motion claiming ineffective assistance of counsel for mishandling of duress defense where defendant could not have succeeded on duress defense because he did not face an imminent threat after he was no longer in the presence of the personal alleged to have threatened him). Nor was any alleged threat "imminent or impending" while Petitioner was arranging for the trips to haul marijuana, making the trips, or waiting in hotel rooms during the course of the trips. Even if Garrett's threats were somehow still looming, Petitioner had ample alternatives to making fourteen (or even eight or nine, as she now alleges) marijuana-hauling trips to Ohio. She could have contacted law enforcement at any point in the lengthy criminal endeavor. Indeed, Petitioner had more alternatives than most – she could have sought protection not only from police, but, according to her declaration, also from her own personal bodyguards. Finally, even construing the facts she now sets forth as true, Petitioner engaged in the criminal enterprise far longer than necessary. Because Petitioner was not under an imminent threat when she committed the crimes, even the slightest period of involvement would have been longer than necessary. Some fourteen or so trips over the course of a ten-month period unquestionably constitutes longer involvement than absolutely necessary. *Cf. United States v. Davis*, 77 F.3d 483, 483 (6th Cir. 1996) (upholding trial court's refusal to permit a duress defense where the defendant engaged in the criminal activity for a year and a half); *Capozzi*, 747 F. Supp. 2d at 852; *Sloan*, 401 Fed. App'x at 70.

7

(Report and Rec., July 15, 2013 at pp. 18-19, 20-21, PAGEID 1840-41, 42-43.)

The Court has reviewed the record and Petitioner's arguments related her claims of duress and coercion *de novo*. The Court finds no error in the Magistrate Judge's legal conclusions regarding Petitioner's claims of duress.

Petitioner next maintains that the Magistrate Judge's assessment and Report and Recommendation reflect that she "rejected all arguments, mitigating circumstances, lack of motive to instigate, and sworn testimony" without any rational basis and against all logic and common sense. (*Id.*) In short, Petitioner complains that the Magistrate Judge did not wholesale accept her arguments and adopt her newly-presented side of the story, despite the law and the contrary facts of record.

In her Objections, Petitioner summarizes her claims against each of her six attorneys:

Summary of Constitutionally Ineffective Assistance of Counsel- R. William Meeks and David Thomas: . . . .

1. Initial Forfeiture Order - Petitioner was advised to admit to "ill-gotten' gain upon seizure of personal cash.
2. No Detention Hearing - Even though Petitioner's family offered all assurances, there was no bond hearing.
3. Explicit Consent & Cause & Prejudice - Petitioner was denied a truthful legal defense.
4. Failure to Move to Suppress Evidence – Petitioner's warrantless search and seizure was not challenged.
5. No Motion for Severance – Petitioner's case should have been severed from co-Defendants.
6. Proffer Statements - Petitioner was advised and coerced into provided perjured proffer statements.
7. Overall Deficient Performance - Petitioner was fatally prejudiced by Meeks' deficient legal representation.

Summary of Claims of Constitutionally Ineffective Assistance of Counsel - James Owen and Todd Long:

1. Not Correcting Materially False Statements – Attorneys were advised of the facts and disregarded.

8

2. Not Investigating and Presenting Mitigating Evidence - Attorneys could have provided mitigating evidence.
3. Granting Unauthorized Interviews Prejudicing Petitioner - Owen granted several damaging media interviews.
4. Detention Hearing and Motion for Bond - In spite of overwhelming sureties, Owen withdrew motion for bond.
5. Suppression of Evidence - Owen and Long purposely suppressed exculpatory evidence to conform with AUSA.
6. Plea Negotiations and Plea Agreement - Owen advised Petition to agree to greater charges in agreement.
7. Overall Deficient Performance - Petitioner was fatally prejudiced when Owen continued Meeks strategy.

Summary of Claims of Constitutionally Ineffective Assistance of Counsel -Jon Saia:

1. Not Correcting Materially False Statements - Saia was advised of the facts and disregarded.
2. Not Investigating or Presenting Mitigating Evidence - Saia could have provided mitigating evidence.
3. Not Filing a Motion to Rescind Plea Agreement - Once notified of its falseness, motion could have been filed.
4. Advancing Materially False Presentence Investigation - Saia promoted a false, prejudicial presentence report.
5. Not Objecting to Co-Defendant's Statements - Saia had opportunity to oppose co-defendant's false statements.
6. Ineffective Representation at Sentencing - Saia's lack of criminal experience caused harm at sentencing.
7. Advised Against Direct Appeal – Saia's lack of criminal experience advised against direct appeal.
8. Overall Deficient Performance – Saia's lack of criminal experience fatally prejudiced the Petitioner.

(Pet.'s Objections, at pp. 3-4, PAGEID 1958-59.)

A review of the Magistrate Judge's Reports and Recommendations reveals that she addressed each of these claims in the context of the law of ineffective assistance of counsel. Petitioner has done no more than suggest that it was somehow illogical or the result of prejudice that the Magistrate Judge did not recommend granting the relief Petitioner requests. Again, the Court has conducted a *de novo* review, reviewed all of the pleadings in this regard, evaluated Petitioner's claims independently, and finds no error in the Magistrate Judge's decision.

Finally, Petitioner raises the issues of defense counsel's decision to withdraw a motion to suppress and her right to appeal her sentence. The Magistrate Judge ordered the parties to supplement the record to provide evidence on these two issues. After reviewing the evidence, including defense counsel's affidavits, the Magistrate Judge issued a second Report and Recommendation. (Report and Rec., Oct. 3, 2013, PAGEID 1935.)

The Magistrate Judge determined that Petitioner's counsel withdrew the motion to suppress pursuant to a calculated legal strategy such that the decision was entitled to deference and did not constitute ineffective assistance of counsel under *Strickland*. (*Id.* at 1940-42.) Petitioner does not quarrel with the determination that her counsel withdrew the motion to suppress as part of their strategy. Indeed, as the Magistrate Judge pointed out, her counsel were convinced from a conversation with the investigating agent that the motion had little chance of success and that Petitioner would receive a less favorable plea offer if she pursued the motion and lost, which they believed would occur. Instead, Petitioner speculates that the DEA investigating officer conducted a "rogue warrantless search" and that a motion to suppress would have been successful. (Pet.'s Objections, p. 7, PAGEID 1962.) She hazards a guess that the agent applied for a search warrant, but was denied for lack of probable cause. (*Id.*) Yet, the record does not bear out any of Petitioner's suspicions. In any event, the Magistrate Judge did not base her decision on the merits of Petitioner's motion to suppress and instead determined that the record conclusively established that her counsel withdrew the motion based on a well-reasoned litigation strategy which precludes a finding of ineffective assistance.

As to Petitioner's claim that her counsel was constitutionally deficient for failing to file an appeal of her sentence on her behalf, the Magistrate Judge found that Petitioner offered no evidence that she would have appealed her sentence with proper consultation. The Magistrate

Judge also emphasized that the lenient sentence Petitioner received suggested that she would not have appealed the term of imprisonment because to do so could result in a significantly greater sentence, including a potential mandatory minimum of ten years of incarceration:

> Not only has Petitioner offered no evidence that she would have timely appealed her sentence with appropriate consultation, but the record suggests that she would not have done so. First, Petitioner pleaded guilty, which, as indicated above, the Supreme Court has recognized weighs against finding that the defendant would have timely appealed. *Flores-Ortega*, 528 U.S. at 480; *see also United States v. Lovell*, 83 Fed. App'x 754, 760 n.3 (6th Cir. 2003) (noting, as did the Supreme Court, that a "highly relevant factor" in this inquiry is whether the conviction follows a trial or guilty plea). Also, Petitioner received a sentence of seventy-two months of incarceration, which was far below the Sentencing Guidelines range of one hundred thirty-five (135) to one hundred sixty-eight (168) months, as well as the prosecutor's request for eighty (80) months. The leniency of her sentence further reduces the likelihood that she would have timely appealed with proper consultation. *See Lovell*, 83 Fed. App'x at 760 n.3 ("A district court must also consider whether the defendant received the bargained-for sentence . . . .")

(*Id.* at 1947-48.)

In her Objections, Petitioner merely asserts that it is "ludicrous" to assume that she, rather than her counsel, made the decision not to appeal the sentence. That may be so. In this case, however, the Magistrate Judge made no such assumption. Rather, the Magistrate Judge reviewed the evidence, discussed the applicable law, and concluded that Petitioner had failed to demonstrate that her counsel were ineffective for failing to appeal her sentence. (*See* Report and Recommendation, Oct. 3, 2013, pp. 8-15, PAGEID 1942-49 (analyzing *Roe v. Flores-Orega*, 528 U.S. 470 (2000), whether counsel advised Petitioner of right to appeal and whether Petitioner suffered prejudice, concluding that evidence failed to demonstrate she would have appealed her sentence)).

11

## V.

Pursuant to 28 U.S.C. § 636(b), this Court has conducted a *de novo* review. For the reasons discussed in detail in the Magistrate Judge's Reports and Recommendations, Petitioner's Objections (ECF No. 277) are **OVERRULED**. The Reports and Recommendations (ECF Nos. 263 and 273) are **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE**